CLARK WEIR, Respondent, *v.* JOHN W. HILL, Appellant.

(GENERAL TERM, EIGHTH DISTRICT, FEBRUARY, 1870.)

Performance by one party of his part of an unwritten contract, which by its terms, is not to be performed by the other party within one year, will not take the case out of the statute of frauds, so as to sustain an action at law against the latter for damages for non-performance.

H. received a dollar, under agreement to invest it in sheep, and double them every four years, until W. came of age, and then to deliver them to him, and made the investment accordingly.—*Held*, that W. at majority could only recover the money received by H. to invest for his benefit, with interest.

THIS action was commenced in a justice's court in Allegany county, on the 30th of May, 1867. Upon the trial before the justice the defendant had judgment for costs. The plaintiff thereupon appealed to the County Court, where the action was again tried, and a verdict recovered by the plaintiff for ninety-six dollars. A motion was made for a new trial by the defendant, and denied, and judgment was recovered on the verdict by plaintiff. The defendant thereupon appealed from both the order and judgment to this court.

*E. E. Harding*, for the appellant.

*E. D. Loveridge*, for the respondent.

Present—MARVIN, BARKER and DANIELS, JJ.

By the Court—DANIELS, J. This was a strict action at law, brought for the recovery of damages for the non-performance of a contract made by the defendant for the benefit of the plaintiff, and he must recover, if he can recover at all, according to the legal, as distinguished from the equitable principles of the law. The contract which it was alleged the defendant had made, and failed to perform, was not in writing. Neither was any note or memorandum of it put in

Weir v. Hill.

writing and subscribed by the defendant who was to be charged by its terms.   As the plaintiff stated it in his complaint, and the evidence tended to establish it upon the trial, it was an agreement by which the defendant undertook to receive a dollar, left by her mother with his wife during the infancy of the plaintiff, and invest the same in sheep, to be doubled every four years during the period of his minority, and at the expiration of that time, to return the sheep to the plaintiff.   This contract was plainly within the statute of frauds, because it could not be performed within one year from the time when it was made, and so long as it remained executory, it was altogether inoperative and void for that reason.

The evidence given on the part of the plaintiff tended to show that the defendant did receive and invest the dollar in sheep for the plaintiff, and undertook to double them every four years while the plaintiff continued a minor.   But it was not satisfactorily shown on the part of the plaintiff that he did double the sheep every four years or in any four during the plaintiff's minority.   And that was one important fact to be proved by the plaintiff before he could entitle himself to a recovery in the action.   For being a void contract, his right to maintain an action for the recovery of the fruits of it depended entirely upon his ability to prove that it had been executed by the defendant, and in that manner excluded from the operation of the statute of frauds.

Upon this part of the case the plaintiff's evidence tended to show that the defendant bought sheep of Metcalf fifteen or twenty years before the trial in the County Court, which was had on the 18th of August, 1868, for the Weir children and his own, and let them out to him at the time he bought them.   But whether they increased or not while left in his hands was not stated.   About twenty years before the trial he desired the husband of Clotilda Weir to take the children's sheep and take care of them, but he declined to do that.   It appeared that a controversy arose with the defendant concerning the sheep claimed by Frank Weir, a brother of the plaintiff, and during

its adjustment the defendant stated that he always intended
to pay the children a pound of wool a head; that he had
bought the sheep; had let them out; and they had caused him
a great deal of trouble, and he had always supposed he could
compromise with them (the children) at the age of twenty-
one years.    The defendant also stated that Frank picked out
·the best of the sheep.    When the summons was served, the
officer testified that the defendant told him that Mrs. Phillips
had been in the habit of leaving money with them to buy
sheep for the children; that plaintiff wanted thirty-two sheep;
that sheep were very high at that time, and he thought that
Clark ought to take up with his dollar and a pound of wool
a head.    The defendant said he didn't think himself under
any obligation, but would fix it up as he had with the others.
The other evidence relating to this part of the case consisted
of positive denials on the part of the defendant that he had
any sheep of the plaintiff's, or was under any obligation to
him.    In the evidence referred to, which was all that was
given from which it can be pretended that the sheep had
been doubled by the defendant, there is none that in any
manner tended to establish that fact beyond the circumstance
that he had let the sheep out after he bought them and the
statement made by the officer who served the summons, and
both together were not·sufficient to prove that as a fact.    He
did not admit in what was said by the defendant to the offi-
cer, that the plaintiff's claim of thirty-two head of sheep was
valid.    Neither did he say on how many head of sheep he
thought the plaintiff ought to take up with a pound of wool
on each.    If he had, there might be some slight color for
presuming that the sheep originally purchased had, by doub-
ling increased to that number.    But he not only refrained
·from making such a statement, but beyond that positively
denied that he was under any obligation even to do by the
plaintiff by way of settlement the same as he had previously
done by the other children.

  This evidence was altogether too loose and unsatisfactory,
to justify the jury in concluding from it, as they must have

Weir *v.* Hill.

done to arrive at the verdict they rendered, that the sheep had been doubled every four years during the plaintiff's minority. It neither naturally, nor logically warranted any such inference. That might have been the fact, but under no rational system of reasoning could it be deduced from the evidence given in the case. And when that is the quality and character of the evidence given, there is no system of legal presumption under which it can be made to justify the conclusion that was evidently drawn from it in this case by the jury. (*O'Gara* v. *Eisenlohr*, 38 N. Y., 296.)

But even if the evidence had been such as to have satisfactorily shown that the defendant had so far performed the void agreement made by him, as to have doubled the sheep during the minority of the plaintiff, the statute would still stand in the way of his recovery. For the stipulation or agreement to return them to the plaintiff, would even then remain executory. And while that proved to be the fact, the courts would have no more right to pronounce that to be valid than they would to hold the entire contract binding without performance in plain conflict with the express terms of the statute. A part performance of a contract, void by the statute of frauds, may render it binding and valid, as far as that extends. But it can have no effect upon the remaining stipulations still continuing executory. As to those, the statute remains operative, declaring them to be void. The sole object of the plaintiff's action, was the recovery of damages for the non-performance of the executory portion of the agreement made. That, he was bound to establish for the purpose of sustaining the legal theory of his case. And when he did so, the statute interposed against him, by declaring the stipulation he relied upon void, by reason of the circumstance, that it still remained executory. If the power exists to maintain an action for the non-performance of one portion of a contract, void by the statute of frauds, it is difficult to see what can stand in the way of allowing the same thing to be done where an entire omission to perform may be shown by the evidence. And that would be no less than a repeal

of the statute itself. If the statute can be disregarded as to any one part of the contract remaining executory, the same reason will justify the courts in doing the same thing by it as to the others, and as to all of them together. It can hardly require authority to show the impropriety of such an administration of the law. In this respect this case is very much like that of *Bartlett* v. *Wheeler* (44 Barb., 162), where it was held that an action could not be maintained for the recovery of damages for the non-performance of a portion of an entire contract void by the statute of frauds, even if other and material portions of the agreement had been fully executed. *Lockwood* v. *Barnes* (3 Hill, 128); and *Broadwell* v. *Getman* (2 Denio, 87), also in principle maintain that conclusion. The case of *Dodge* v. *Crandall* (30 N. Y., 294), contains nothing in conflict with this theory. For there the verbal agreement made for the extension of the time for the payment of the mortgage debt was fully executed; and that the court held actually created the extension as a matter of fact. It was no longer a contract to extend the time of payment, but an agreement that through its performance had produced the extension stipulated for. The entire theory of the plaintiff's case shows that no such result had been produced by the partial performance of the agreement in controversy in this cause. The court should have held and charged as it was requested to, that the contract in suit was void under the statute of frauds, and that would have reduced the plaintiff's right of recovery to the money received by the defendant to invest for his benefit, and interest upon it to the time of the trial. The judgment and order should be reversed and a new trial ordered, with costs to abide the event.

BARKER and MARVIN, JJ., concurred

Judgment reversed.