(1 App. Div. 202.)

### LEOPOLD v. HALLHEIMER.

(Supreme Court, Appellate Division, Second Department. February 4, 1896.)

MORTGAGES—COVENANTS—EFFECT OF SUBSEQUENT CONTRACT.
> A covenant in a mortgage that the mortgagor shall pay taxes, assessments, and water rates, and that, if he allows the same to remain in arrears for three months, the principal sum of the mortgage shall, at the option of the mortgagee, become due and payable immediately, is not abrogated by a written agreement extending the time fixed for payment of the mortgage.

Appeal from special term.

Action by Lorenz Leopold against Esther Hallheimer, impleaded, to foreclose a mortgage. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Fernando Solinger, for appellant.
Max Hallheimer, for respondent.

PER CURIAM. This action was brought to foreclose a mortgage upon real estate, dated April 26, 1888, made by Esther Hallheimer to Andrew Wils, to secure the payment of $1,000 one year after date, with interest payable halfyearly at the rate of 5 per cent. per annum. On May 4, 1892, the mortgage and the accompanying bond were assigned to the plaintiff, and on May 5, 1892, the plaintiff and said Esther Hallheimer entered into an agreement in writing and under seal, which, among other things, provided "that the period of payment of the said mortgage * * * be extended five years, and that the said mortgage shall not be due and payable until the first day of May, one thousand eight hundred and ninety-seven"; and the said Esther Hallheimer further agreed to pay interest upon said mortgage at the rate of 6 per cent. per annum, payable halfyearly. The mortgage contained covenants upon the part of the mortgagor to pay taxes, assessments, and water rates, and to keep the property insured against loss by fire, and to assign the policy to the mortgagee, as collateral security for the loan; and in default thereof the mortgagee was authorized to make such payments, and when made by him the amounts paid were to become a part of the mortgage debt, and were to be due and payable immediately. The mortgage further provided that if the mortgagor should allow any assessments, annual taxes, or water rates on such premises to remain un-

paid and in arrears for the space of three months after the same were confirmed, or refused to pay, on demand, to the mortgagee, any sum paid by him for taxes, etc., then the whole principal sum of the loan should, at the option of the mortgagee and his assigns, be and become due and payable immediately.  The complaint in this action alleged that the mortgagor had failed to pay the annual water rates on said premises for the years from 1886 to 1893, inclusive, and certain taxes thereon for the years 1893 and 1894, and that more than three months had elapsed since the same had been confirmed, and that the plaintiff elected that the whole principal sum of the mortgage should become due and payable.  These facts so alleged were not denied, but the trial court found that the principal of said bond and mortgage did not become due until May 1, 1897, and dismissed the complaint.  We are of the opinion that this conclusion cannot be sustained.  The agreement made between the parties on May 5, 1892, did not, in terms, rescind the covenants in the mortgage relating to the payment of taxes and insurance, and there is nothing in its provisions which necessarily indicates that such was the intent of the parties.  By the original terms of the mortgage, the principal sum was payable on April 26, 1889.  But that provision was subject to the covenants in reference to the prompt payment of interest, taxes, and insurance, and was liable to be shortened by the mortgagor's default in their performance.  It is in entire harmony with the original contract, and with the usual stipulations of this class of securities, to construe the agreement as extending the time of payment of the principal sum until May 1, 1897, subject to the performance of the covenants contained in the mortgage; and we are unwilling to hold that such important conditions in the mortgage have been abrogated, in the absence of an express agreement, or a clear implication to that effect from the terms of the written contract.

The judgment must be reversed, and a new trial granted, with costs to abide the event.